time on P.C.R rule 61 in the absence of all the Discovery that was deliberately Suppressed by the trial Prosecutor. The merits of the "Free Standing Confrontation clause claim were obvious at the time of "BROWN" direct appeal failure of Court Appointed Counsel to raise dead bang winner claim on appeal Constitutes ineffective assistance of Appellate Counsel even though Counsel may have raised other Strong but ultimately unsuccessful claims, the Substantial merits of the Claim provide the necessary Prejudice to excuse the default. "Banks v. Reynolds 54, F.3d 1508, 1515, (10th Cir., 1995)."

Whether Super. Ct. and Supr. Ct. of the State of Del. committed an error in formulating and applying the law when both Courts procedurally barred, defaulted Brady claim and other — grounds raised in P.C.R. rule 61 Motion.

Ground 3: Prosecutor lead three State Witness to Perjury against facts and Prior statements.

Supporting facts: Officer BOZEMAN — Perjury compare it to Officer DUCKETT reports (A-12, tri.rec. 4/1/98 pg. 101:5:11 + (A-13,) tri.rec. 4/1/98 pg. 102:1:4, VS. (A-14) PHYSICAL EDVIDENCE — DETECTIVE DONOVAN CASE SUMMARY pg. 2, "Officer BOZEMAN filed no reports". Detective Donovan — Perjured himself saying defendant had on a gray

12

Jacket, when he took Polaroid picture of defendant on arrest date. see arrest picture and (A-15) tri-rec. 4/1/98 pg. 136:1:8, and (A-10) tri.rec. 4/1/98 pg. 126: 10:13. Jeffrey Adams perjured himself in his testimony (A-16) tri.rec. 4/1/98 pg. 66:4:11, Compare it to his Statement (A-11) on 5/17/97 defendants arrest date taken by Detective Robert Donovan Question #5 and Answer #5 on page 2: "he states he did not see anyone get shot." But Prosecutor lead three witnesses for the State against truth of reports, statements and pictures.

(A-14, PHYSICAL EVIDENCE pg. 2), (A-10 POLAROID ARREST picture of "BROWN") and (A-11, Jeffrey ADAMS Statement), were all deliberately suppressed by the trial Prosecutor and knowingly use of perjured testimony. "Such Suppression of evidence amounts to a Constitutional Violation only if it deprives the defendant of a fair trial." Consistent with our over riding Concern with Justice of the finding of guilt." U.S. v. Agurs, 427, US. at 112, 96. S.Ct. at 2401, a Constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."

In Pyle v. Kansas, 317. US, 213, 215, 216, 63 S.Ct. 177, 178, 87, L. Ed. 214: We phrased the rule in broader

13

terms: "Petitioner's Papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony Knowingly used by the State authorities to obtain his conviction, and from the deliberate Suppression by those same authorities of evidence favorable to him. These allegations Sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven would entitle — Petitioner to release from his Present Custody." "Mooney v. Holohan, 294, U.S.103, 55, S.Ct. 340, 79 L.Ed. 791."

"A question of fundamental fairness rising to level of Constitutional due Process, resulting from Prosecutions non-disclosure of exculpatory evidence cannot be brushed aside in Habeas Corpus Proceeding as harmless error," citing: "Barbee v. Warden, Md., Penitentiary, (C.A.4.(Md.)1964)" ( ↑ Cite: 331, F.2d, 842 ↑ )

"When Prosecution fails to disclose material exculpatory evidence in Violation of Brady rule, Post Conviction Relief cannot be procedurally barred, as a Brady Violation under mines the fairness of the Proceeding leading to the Judgment of Conviction." Super.Ct.CrimRule 61 (1)(3)" State of Del v. BROWN ID. NO. 9705011656 P.C.R. DENIED on 7/30/02 procedurally Barred Brady rule Violation and P.C.R. rule 61 Appeal State v. BROWN Nos. 31, 57, 2003 also procedurally barred Brady v. Maryland claims raised in P.C.R. on June 24, 2003 when facts show Suppression of all Discovery and Perjury is how "BROWN" was unconstitutionally Convicted.

Two Prosecutors deliberately Suppressed defendant "BROWN" arrest photo to Knowingly use perjured testimony to deceive trier of fact to believe "BROWN" had on a gray jacket to obtain conviction when "BROWN" arrest photo of 5/17/97 reveals "BROWN" had on a long Coat color Yellow and black. Perjured testimony below:

(A-15. Assistant Prosecutor Detective DONOVAN · REDIRECT 4·1·98 pg. 136 : 1:8):

1 officer Bozeman testified they retrieved the gun and
2 the drugs?
3 A Yes I did.
4 Q And did you see the color of that jacket?
5 A Yes, it was like a gray.
6 Q Did that match the description given to you
7 by some of the witnesses?
8 A That's correct.

* The asst. prosecutor Det. Donovan photographed "BROWN" on arrest date 5/17/97 Wearing a long Yellow and black Coat not a jacket and not a gray one:

(A-10 Asst. Prosec. Det. Donovan 4·1·98 pg. 126 : 10 : 13): DIRECT:

10 A Yes, I did I took this polaroid picture
11 of him.
12 Q And who was that?
13 A That was JAMES BROWN

We noted in U.S. V. Agurs, 427, US. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed. 2d. 342 (1976), that the rule of Brady arguably might apply in three different situations involving the discovery, after trial, of evidence that had been Known Prior to trial to the Prosecution but not to the defense. Our holding in "Agurs" was that the Brady Rule applies in two of the situations, but not in the third. The two situations in which the rule applies are those demonstrating the Prosecutions Knowing use of perjured testimony — exemplified by "MOONEY V. HOLOHAN" 294, U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and the Prosecution's SUPPRESSION of Favorable Evidence specifically requested by the defendant, exemplified by Brady itself. In both Situations, the Prosecutions deliberate non-disclosure constitutes Constitutional error the Conviction must be set aside if the Suppressed or perjured evidence was "material" and there was "any reasonable likelihood" that it "could have affected the outcome of the trial".

Prosecutor Knowingly lead Officer Bozeman into Perjured testimony against the PHYSICAL EVIDENCE report of Officer DUCKETT which reveals Officer Bozeman Perjury, and the Prosecutor Suppressed the PHYSICAL EVIDENCE report of Offic. DUCKETT hided it away from the accused and the trier of facts (Jury), Offic. Bozeman filed no reports.

(A-12, BOZEMAN-DIRECT, 4.1.98 Pg. 101:5:11):

    5 Q I believe you said you found the gun in the
    6 left pocket of the jacket?
    7 A Yes.
    8 Q Where did you discover the Rite Aid bag?
    9 A In the right pocket of the jacket.
    10 Q Right pocket of the jacket.
    11 A The same jacket yes.

(A-13, BOZEMAN-DIRECT 4.1.98 pg. 102:1:4):

    1 A The report does state that there were three
    2 empty casings and two live rounds. But upon
    3 unloading the gun, as I stated I found two of each
    4 two live and two spent.

The prosecutor deliberately Suppressed this PHYSICAL EVIDENCE Report (A-14) of Officer DUCKETT given to Detective R. DONOVAN for his Case Summary page #2:

PHYSICAL EVIDENCE:

        EVIDENCE DETECTION UNIT Officer FILLIPONE RESPONDED TO THE CRIME SCENE AND TOOK PHOTOGRAPHS. OFFICER DUCKETT RECOVERED A .22 CALIBER F.IE. BRAND REVOLVER MODEL T-18, SERIAL NUMBER 02888 WHICH CONTAINED THREE SPENT CASINGS AND TWO LIVE ROUNDS FROM THE LEFT FRONT JACKET POCKET OF THE SUSPECT JAMES BROWN.

        OFFICER DUCKETT ALSO RECOVERED ONE PLASTIC BAG WHICH CONTAINED NUMEROUS SMALL PLASTIC BAGS WHICH CONTAINED A WHITE/TAN CHUNKY SUBSTANCE FROM THE SUSPECT JAMES BROWN'S RIGHT FRONT JACKET POCKET ALONG WITH $307.00 UNITED STATES CURRENCY WHICH WAS RECOVERED FROM THE LINING OF THE SUSPECTS JACKET.

*The above PHYSICAL EVIDENCE REPORT OF OFFIC. DUCKETT WAS SUPPRESSED AND SHOWS OFFICER BOZEMAN PERJURED TESTIMONIES, Knowingly used.

16

Trial Prosecutor lead State Witness Jeffrey Adams into knowingly used perjured testimony against "ADAMS" prior statement which Prosecutor deliberately suppressed away from the accused and the trier of facts during Prosecution of Attemp. Mur. 1:

(A-16 Perjured Testimony of ADAMS-DIRECT, 4-1-98, pg. 66:4:11):

4 Q And you said you heard some arguing. Did
5 You ever see any fisticuffs, any punches thrown or
6 anything like that?
7 A No. He was in his face like this, like a
8 fair fight, let's get it on, and that was it. They
9 was like, you know, supposed to have been a fair
10 fight. Then the gentleman just pulled out something
11 and shot him.

Prosecutor Suppressed Jeffrey ADAMS Statement of 5/17/97 interviewed by assistant prosecutor Detective Robert Donovan where "ADAMS" states he did not see anyone get shot." (A-11) RD Ah again, this is relative to case number 97-12047, which is a shooting that occurred in the area of 23rd and Lamotte Street on this date at approximately 1156 hours. If you could tell me just basically what you saw and heard?

A-5 What I saw was a arguement started between Biggy and the other guy and Gray Jacket who did the shootin'. I went... I came out... I come out side, they was arguing, and that was it, then I went back in the house, then when I heard two gun shots, that's when I came back outside, and that's when the guy started shootin' the gun in the air and that's when he ran. "I did'nt see when he shot Biggy," but I seen when he did all the other and all that. And that's when I went around the corner and tried to catch him and that's when the Wilmington Police showed up, and I helped them you know handcuff him and tried to keep the crowd off of him.

"Petitioner's papers are inexpertly drawn, but they do set forth allegations that his imprisonment resulted from perjured testimony, knowingly used by the state authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution and, if proven, would entitle Petitioner to release from his present custody(Mooney v. Holohan 294, U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.)."

18

Ground 4: Suppression of Favorable Evidence, Prosecutorial Misconduct.
Supporting Facts: Defendant arrest Picture was entered into evidence
for trier of facts to see that defendant was not the Suspect,
the Prosecutor stole it out of evidence Suppressed deft's defense.
(See A-18, tri.rec. 4/1/98 pg. 19:10:23 and A-19, tri.rec. 4/1/98 tri.rec.,
4/1/98 pg. 125:1:23). (A-24, Officer DUCKETT Supplement Report
was also Suppressed, (arrest report). See Super. Ct. Docket
Sheet    line #72 shows D.A.G. Peter N. Letang gave notice
to destroy exhibits the arrest picture was a exhibit. The
prosecutor and all witness testified that the suspect had on
a gray jacket. "BROWN" had on a Yellow and black
long coat. No jacket, color gray. "BROWN" arrest
picture shows "BROWN" is not the suspect, police sought.
        The prosecutor Perjured himself falsely claiming "BROWN"
had on a gray jacket (A-26), He Knowingly used perjured
testimony of Officer BOZEMAN to falsely say "BROWN" had on a
gray jacket (A-40). And suppressed the arrest picture of
"BROWN" wearing no jacket color gray, the arrest
picture shows "BROWN" wearing a long coat color
Yellow and black. (A-18, A-19). Suppressed from the Jury.
        "Petitioner's papers are inexpertly drawn, but they
do set forth allegations that his imprisonment resulted
from Perjured testimony, Knowingly used by the State
authorities to obtain his Conviction, and from the deliberate
Suppression by those same authorities of evidence favorable
to him. These allegations Sufficiently charge a deprivation of
rights guaranteed by the Federal Constitution, and, if
proven, would entitle Petitioner to release from his present custody."
"MOONEY v. Holohan 294, U.S. 103, 55 S.Ct. 340, 79 L.Ed. 79 i."

Ground 5: Illegal search and Seizure, Defendant 4th Amend., right was violated. Supporting facts: Gun and Cocaine put in evidence with no "nexus" to offenses alleged in the Indictment (A-5). Defendant never fit Suspect description (A-9, tri.rec, 4/1/98, pg. 89:19:22)., "Compare to Defendant arrest picture." Gun was never identified, gun was never tested, (A-20, tri.rec, 3/31/98 pg. 104:7:11) and (A-21, tri.rec, 4/1/98 pg. 47:15:17) and (A-27, tri.rec. 4/1/98 pg. 134:15:22) and (A-28, pg.135:9:12).

Cocaine was found in defendant pocket with no "nexus" to trafficking Cocaine, P.W.I.T.D., (A-22, tri. rec, 4/1/98 pg., 141: 21:22) and (A-23, tri.rec 4/1/98 pg.142:1:20). Defendant was stop and search under illegal search and Seizure, "BROWN" never fit Suspects description.

Trial prosecutor suppressed all Discovery, including two police officers reports of two different descriptions of Color of clothing. (Officer DUCKETT report, A-24, Says, suspect had on a gray jacket) and (Officer GEARHART report A-25, says suspect had on a dark jacket with Yellow lining). Both reports were Suppressed away from trier of facts and the accused. Prosecutor's Opening and Closing told Jury, defendant had on a gray jacket (A-26).

"If evidence the Prosecutor failed to timely disclose is both favorable and material, a determination must be made whether its delayed disclosure precluded effective use of the information at trial., if the defendant was unable to use the evidence - - -

19

effectively because of disclosure, a new trial is
Warranted." "Atkinson v. State, 778, A.2d 1058 (Del. Supr. 2001)."

"Prosecutor put in evidence a gun with no nexus to
Counts I, II, III and IV of the Indictment (A-5). Detective Dono-
-van testified he never actually saw the gun or casings
or projectiles until yesterday, (A-27, tri.rec. 4/1/98 pg.
134:18:22). Detective Donovan testified "he cannot de-
termine whether bullets allegedly in the "Fitzgerald's"
was fired from gun, Prosecutors put in evidence.

Detective Donovan said he don't have the projectiles,
No, I don't, (A-28, tri.rec. 4/1/98 pg. 135:9:12).

"A question of fundamental fairness rising to —
level of Constitutional due Process, resulting from
Prosecutions non-disclosure of exculpatory evidence
cannot be brushed aside in habeas Corpus Proceeding
as harmless error." Cite: 331, F.2d 842, "Barbee v. Warden,
Md, Penitentiary, (C.A.4 (Md.) 1964)."

*"The authentication or identification under D.R.E.
901 (a) requires evidence sufficient to support a —
finding that the matter in question is what the propo-
-nent claims. Has not been met by the State in this
Case." Citing: Farmer v. State, 698 A.2d, 946 (Del. Supr,
1997), Reversed and remanded. "Where unwarranted –
inferences reflect adversely on defendant by portraying



him as having a gun available to him without establishing that gun was probably used in shooting, admissibility is barred because Speculation -- creates prejudice even apart from weighing process required by evidentiary rule."
"(Rules of Evidence, D.R.E, 403)."
"(A-27, tri. rec. 4/1/98 pg. 134:18:22 and A-28, pg. 135:9:12)"

"DETECTIVE DONOVAN - CROSS"

18 Q So there were no other bullets or casings
19 that came out of this gun, just the four items that
20 were recovered?
21 A As far as I know, I never actually saw
22 that gun or casings or projectiles until yesterday
9 Q Were you able to determine whether the
10 bullet that is in Saladine and the bullet that was in
11 Yusuf was fired from that gun?
12 A I don't have the projectiles. No, I don't.

"No witness Positively identified a gun Prosecutor's put in evidence with no legal nexus as the actual instrumentality allegedly used in Counts I, II, III and IV of the Indictment (A-5)" "(A-20 and A-21)":

8 Q And why do you say you recognize that?
9 A Because that is what kind of -- I can't say
10 that that is actually the gun but it was similar to
11 that one

"(A-20, tri. rec. 3/31/98 SALADINE FITZGERALD DIRECT pg. 104:8:11)"

21

15 THE COURT: But before the shot, you saw no

16 gun that you can recall?

17 THE WITNESS: NO, I didn't see no gun.

(A-21: Yusuf FITZGERALD TRI.REC 4/1/98 pg 47: 15 : 17 -...)

"The state may authenticate a weapon it claims was the actual instrumentality of a crime in two ways. It may have witnesses visually identify the weapon as the actual instrumentality of the crime or it may estab--lish a chain of custody, which indirectly establishes the identy and integrity of the evidence by tracing its continuous where abouts." Citing: Whitfield v. State, 524, A.2d, 13, (Del. Supr, 1997). Rule of Evidence, 901 (a).

The prosecutor knowingly used perjured testimony of Officer BOZEMAN to falsely establish a chain of custody concerning a gun in the absence of Officer Duckett (A-14, PHYSICAL EVIDENCE REPORT prosecutor deliberately did suppress away from the accused and the trier of facts).

"Officer Duckett filed reports concerning the gun and how many casings spent and how many live rounds were recovered in the gun. Officer BOZEMAN filed no reports of how many casings or live rounds he falsely claims he found in the gun. Officer DUCKETT was not available to be confronted as an accuser of me concerning how he recovered a gun from me "BROWN"."

22

"The Perjury of Officer BOZEMAN Chain of Custody testimony about gun."

(A-12 tri.rec. 4/1/98 pg. 101:5:11 : BOZEMAN - DIRECT, & A-13 pg. 102:1:4)

5 Q I believe you said you found the gun in the
6 left pocket of the jacket?

7 A Yes.

8 Q Where did you discover the Rite Aid bag?

9 A In the right pocket of the jacket?

10 Q Right pocket of the jacket?

11 A Yes.

1 The report does state that there were three
2 empty casings and two live rounds. But upon
3 unloading the gun, as I stated, I found two of each
4 two live and two spent.

"The truth of who recovered the gun, Suppressed report"
PHYSICAL EVIDENCE:

EVIDENCE DETECTION UNIT OFFICER FILLIPONE RESPONDED TO THE CRIME SCENE AND TOOK PHOTOGRAPHS OFFICER DUCKETT RECOVERED A .22 CALIBER F.I.E. BRAND REVOLVER MODEL T/18, SERIAL NUMBER 02888 WHICH CONTAINED THREE SPENT CASINGS AND TWO LIVE ROUNDS FROM THE LEFT FRONT POCKET OF THE SUSPECT JAMES BROWN.

OFFICER DUCKETT ALSO RECOVERED ONE PLASTIC BAG WHICH CONTAINED NUMEROUS SMALL PLASTIC BAGS WHICH CONTAINED A WHITE/TAN CHUNKY SUBSTANCE FROM THE SUSPECT JAMES BROWNS RIGHT FRONT JACKET POCKET ALONG WITH $307.00 UNITED STATES CURRENCY WHICH WAS RECOVERED FROM THE LINING OF THE SUSPECTS JACKET.

(A-14, OFFICER DUCKETT, report Suppressed by D.A. from Jury & Accused).

23

24

Ground 6: Ineffective Assistance of Counsel for refusing to file Pre-Trial Motions in Defense of Defendant. Supporting facts: Court Appointed Counsel did'nt file Motions Suppression of favorable evidence, Severance from Prejudice from Joiner of Offenses, In Support of Motion for Illegal Search and Seizure. And Motion in LIMINE, concerning gun and cocaine with no nexus in the Indict ment.

Ground 7: Inefft. Asst. of Coun, for inferring that deft is guilty to Jury, during opening and closing statements: Tri.rec. 3/31/98 pg. 28:23, (A-33) and pg. 29:1:4 (A-34) "See Appendix". And (A-35) Tri.rec. 4/2/98 pg. 15:5:8.

(A-33): 23 There's two issues to this case. One, did
(A-34): 1 the police arrest the right man; and two, if the
         2 right man was arrested, was he properly charged. I'm
         3 going to talk a little bit about the second issue
         4 because I think the first issue is pretty evident.
(A-35): 5 than five grams of cocaine. The trafficking charge
         6 is there before You. It's not going to be denied.
         7 He resisted arrest. That is not in
         8 dispute.

D.A. suppressed J. ADAMS 5/17/97 statement which refutes "BROWN" allegedly resisted arrest (A-11 pg. 2 Answer #5 and A-11 pg. 3 Answer #16.) And the D.A. Suppressed report of Officer DUCKETT who was not present at Jury trial to I.D. "BROWN" for resisting arrest as the accuser, and Violated accused right to Confront Offic. Duckett also the Suppressed report (A-24: pg. 4 of 4 reveal deft, was read miranda at Central, which refutes the resisting arrest charge . . . . "

*Trial Court Committed an error in formulating and applying the Law when Court DENIED DEFENDANT POSTCONVICTION RELIEF:

** On Ground 8: Ineffective Assistance of Counsel for not invoking Sequestration order Defendant requested.

Supporting Facts: Detective Donovan testified and Sat as Assistant Prosecutor (A-36) tri. rec. 3·31·98 pg. 13:10:12, (A-37) tri. rec. 3·31·98 pg. 23:12:16, And (A-38) tri. rec. 4·1·98 pg. 121:1:6, (A-39) tri. rec. 4·1·98 pg. 182:1:2 .   .    .    .

Court Appointed Attorney conduct fell below that of reasonable professional Standards for not objecting to Detective Donovan testifying in behalf of the state after he heard all of the other states witness testifying and he sat as a Assistant Trial Prosecutor. The Attorney conduct caused the defendant actual prejudice satisfying Strickland v. Washington, 466, U.S. 668, 667 (1984).

Citing: State v. Robinson, 646 A.2d 118, 230 Conn. 591:

Conn. 1994. Right to have witnesses Sequestered is important right that facilitates truth seeking and fact finding of trial. "Sequestration" is a procedural device that serves to prevent witnesses from tailoring their testimony to that of earlier witnesses; it aids in detecting testimony that is less than candid and assures that witnesses testify on the basis of their own Knowledge.

25

Primary purpose of Sequestration Order is to ensure that defendant receives a fair trial by preventing witnesses from shaping their testimony to corroborate falsely the testimony of others.

Detective Robert Donovan shaped his false testimony to ___ Corroborate falsely the false testimony of others: (A-9) Tri.rec. 4.1.98 pg. 89:19:22 officer BOZEMAN testify that 911 radio gave a vague description of a suspect A Black male wearing a gray Jacket. (A-10) Tri.rec. 4.1.98 pg. 90:5:17 Officer Bozeman claims I fit the description a Black male wearing a gray Jacket. *His testimony is Perjury.

Detective Donovan used officer BOZEMAN FALSE testimony (A-15) tri.rec. 4.1.98 pg. 136:4:9:
And did you see the color of the jacket yes it was like gray. Did that match the description given to you by some of the witnesses. That's correct

Than Detective Donovan said that's correct when the Prosecutor asked him was the jacket MR. BROWN had on at the police station that we talked about this morning dark in color black or red? Donovan said that's correct. Question did you have a chance to observe that Donovan said yes I did see (A-39) -Tri.rec. 4.1.98 pg 182:20:23 and (A-41) Tri rec. 4.1.98 pg. 183:1:3). Compare to Officer Brock (W-3) TARYRIN CUSTIS AKA TARYRON BURRIS (A-25) pg.3. GEARHART SUPPLEMENT DESCRIPTION OF THE DEFENDANT + Ground 4 Arrest PHOTO,

26

Trial Court Committed an error in formulating and applying
the Law when Court DENIED DEFENDANT POST CONVICTION
** RELIEF ON GROUND NINE : Defendant forced to Trial in
Prison GARB, Prosecutor had Deft., brought in front of
51 Member Jury PANEL Before trial + Voir Dire begin
to Pick a Jury from said PANEL prejudice Defendant
as a Convicted Prisoner before the Honor arrived.
(A-42) + tri.rec. 3·31·98 pg. 2:1:22 Note time 10:35 A.M.
A-13 + tri.rec. 4·1·98 pg. 102:10:11 · · · · · - - .)

Pa.1976, Defendant should be allowed to wear garb
of innocence at trial and should not absent exceptional
Circumstances, physically restrained while before Jury.
Com. V. Davis, 351 A d 642, 466 Pa.102.

Conn.1977. Placing a defendant on trial while dressed
in Prison uniform is error. States v. Yates, 381, A.2d, 536, 174,
Conn. 16. A defendant has a Constitutional right to a fair
trial and it is the duty of the trial Court to prevent situations
from arising during the trial which would prejudice the accused
in the minds of the Jury.

Conn.1984. Trial Court Court's duty is to protect a defend-
-ant's Constitutional right to a fair trial and to prevent
situations from arising which would prejudice the accused
in the minds of the Jury. U.S.C.A. Const. Amend.6. State V.
Glenn. 481 A.2d 741, 194, Conn. 483.

* Trial Prosecutor had Court guards escort Defendant "BROWN" into
Courtroom full of 51 MEMBER JURY PANEL DEFENDANT WAS UNDER —
PRISON GUARD ESCORT DRESSED IN PRISON GARB WAS MADE TO SET
IN COURTROOM FROM 9 to 10 o'clock until Honor arrived For Voir Dire.

17

Court Appt'd Counsel conduct fell below that of reasonable professional standards and his conduct caused the defendant actual prejudice for not objecting to the trial prosecutor had defendant escorted by Prison Guard while dressed in Prison GARB escorted in front of 51 Member Panel of which 14 Jurors were picked who later convicted Defendant. Counsel was ineffective Assistance of Counsel for not objecting to having to pick from said 51 Member Jury PANEL which minds were prejudiced against the de- - fendant who was escorted by prison guards, dressed in Prison GARB For that sole purpose planned by the trial prosecutor. Counsel satisfies the two prongs of Strickland v. Washington, 466, U.S. 668, 667, (1984).

*Trial Court committed an error in formulating and applying the law when Court DENIED DEFENDANT POST CONVICTION RELIEF ** ON GROUND TEN : INEFFECTIVE ASSISTANCE OF COUNSEL for not filing Motion in Limine to exclude illegal references to the gun and cocaine with No "legal Nexus" to the alleged offenses in the Indictment.

See Super. Ct. Docket and complete trial record demostrate that the Court Appt'd Counsel failed to defend the accused with all the well known rights, and rules of evidence, and Motions in defense of the defendant.

28

✳ Ground II: Ineffective Assistance of Counsel for failing to Subpoena the Arresting Officer Micheal J. Duckett listed in Count 8 of the Indictment Resisting Arrest. Denied a right confront Accuser.

Jeffrey Adams testimony and statements show the defendant didnot resist arrest but was trying to avoid being attacked by Yusuf Fitzgerald and a crowd while Officer DUCKETT was arresting Defendant and handcuffing Defendant. Bottles were being thrown at the defendant See J. Adams testimony tri.rec. 4.1.98 pg. 68: 22:23:(A-43) pg. 69:1:4:(A-44) Jeffrey Adams statement on 5/17/97:(A-pg. 2 Quest. 5 Answer 5 By Detective Robert DONOVAN "helped them you know hand cuff him and tried to keep the crowd off him." Court Appointed Counsel also failed to Subpoena a defense Witness "Kevin Britt" on his behalf . . . .

## " Supporting Facts " "Bozeman-Direct"

Trial Record 4.1.98 Page 88 lines 17.18,19,20,21,22,23: (A-8)

17      Q  You were referring to we. Did you have a
18 partner at that time?
19      A  My partner, Officer Micheal Duckett.
20      Q  Is he still presently your partner?
21      A  NO, he's not.
22      Q  Is he presently on injured relief duty?
23      A  He's off sick from work.

The above testimony shows the violation of the Guaranteed United States Constitutional Sixth Amendment Right to Confront AN ACCUSER. Under Federal and State Constitutional Laws of the UNITED STATES OF AMERICA, also Violates Due Process 14 Amend.

(A-8) AND (A-9)

"SUPPORTING FACTS - DONOVAN -DIRECT - Trial Record"

" 4·1·98 page 130 : 9 : 23 and trial record Pg. 131 : 1 : 7 dated 4·1·98." (A,6

9 Q As a result of your investigation and your

10 interviews, did you make a determination about

11 formally placing the defendant under arrest?

12 A That's correct.

23 Q And are you the person who in fact placed

14 him under arrest?

15 A No. This was all added on to the one

16 incident, arrest report, which was - - Officer Duckett

17 made out the arrest report.

18 Q When you decide to formally arrest someone,

19 sir, do you normally prepare what is referred to as

20 arrest warrants?

21 A That's correct.

22 Q Did you prepare those?

23 A No. I did not.


1 Q Who prepared those?

2 A Officer Duckett did.

3 Q And did you confer with him?

4 A Yes, I did. I told him.

5 Q And assisted him in the preparation of

6 those?

7 A That's correct.

" The above testimony shows two things officer Duckett arrested
the defendant and filed the Arrest reports to Arrest the Accused.
" Never did Officer Harold Bozeman file a Arrest Report or any reports
concerning this case nor did he read the Accused his Miranda Rights
Only Officer Duckett filed Arrest Reports without reading Miranda to Me

30

" SUPPRESSION OF FAVORABLE EVIDENCE TO AN ACCUSED
BY TRIAL PROSECUTOR IS A VIOLATION OF DUE PROCESS.

" JEFFREY ADAMS Statement interviewed by Detective R. Donovan
W.P.D CASE NO. 97-12047 page 3 date of arrest 5/17/97:" (A-11)

Q 16  Okay, okay. And you said there was at least two people shot maybe
a third person?

A 16  Right, the third person... I was two... the other person
who I stopped the Pol... stopped him for jumpin' on the guy
when the Police had him, we never knew he was shot! 'Til he said
he was shot in the arm. The Person who we was worryin' about was the
one we thought got shot in the head, who or whoever the guy
who did the shooting, we thought he hit him in the head, but he
just brazed him. We thought he was shot in the head, then we...
then everybody said he shot Biggy in the eye. He took the
gun and shot him. I didn't see the part when he shot Biggy
but everything else, that's when I seen him when he emptied
the gun and that's when he start running.


" The above Statement shows the Accused was trying to avoid
being jumped on when the police had the Accused the accused
never resisted arrest. This Statement also shows that Jeffrey
Adams did not witness a shooting. Even though he testi-
fied that he  saw the "Gentleman just pulled out the gun,
shot him (A-3 Adams Direct 4-1-98 pg. 68:6-7) Perjured testimony: (A-4
" Impeachment evidence falls within the Brady rule, which precludes
the state from Suppressing evidence favorable to a defendant if
that evidence is material either to guilt or Punishment." 778 A.2d
1058, Atkinson v. State, (Del. Supr. 2001): [6] Criminal Law ⊂⊃ 700(4).

31

52

"If evidence the Prosecution failed to timely disclose is both favorable and material, a determination must be made whether its delayed disclosure precluded effective use of the information at trial; if the defendant was unable to use the evidence effectively because of delayed disclosure, a new trial is warranted."

778 A.2d 1058, Atkinson v. State, (Del. Supr. 2001): [7] Criminal Law 919(1)

SUPPRESSION OF FAVORABLE EVIDENCE

WITNESS # 6 : KEVIN BRITT, BLACK MALE 7/1/64, 310 W 22ND
STREET WILMINGTON, DE  H - 655-3464
(A-45)

At approximately 1230 HOURS DETECTIVE SERGEANT CHRISTINE DUNNING SPOKE WITH KEVIN BRITT IN THE DETECTIVE DIVISION, THE INTERVIEW WAS RECORDED. BRITT ADVISED THAT HE WAS IN THE UNIT BLOCK E 23RD STREET DRINKING BEER WITH SOME FRIENDS, BIGGIE AND E-MAN. HE ADVISED THAT BIGGIE AND E-MAN GOT INTO AN ARGUMENT. BRITT ADVISED THAT HE ATTEMPTED TO BREAK UP THE FIGHT.

BRITT ADVISED THAT IT COULD OF BEEN OVER DRUGS BUT HE IS NOT SURE. HE ADVISED THAT HE DID NOT KNOW WHO PULLED OUT THE GUN FIRST. BRITT ADVISED THAT HE HAD NO ADDITIONAL INFORMATION REGARDING THIS INCIDENT. FOR FURTHER INFORMATION SEE TRANSCRIBED STATEMENT.

( PAGE# 6 OF 9, 30-97-12047 DET. ROBERT DONOVAN I-6278 "CASE SUMMARY".)

The Court Appointed Attorney did not Subpoena "Kevin Britt" as the defendant requested for the attorney to do. Nor did the attorney object to the trial Prosecutor Suppression of the Entire Deputy Attorney GENERAL DISCOVERY REPLY which contained the above Statement of "KEVIN BRITT" From Det. Donovan Case Summary As well as Detective Donovan interview statement of Jeffrey Adams and The Arresting Officer Micheal J. DUCKETT Arrest reports and His AFFidavit AND His PHYSICAL EVIDENCE REPORT. All DISCOVERY WAS SUPPRESSED FROM THE DEFENDANT BY THE Trial Prosecutor and Was Assisted By the Court Appointed Counsel who did Not Subponae the Arresting Officer M.J. DUCKETT, the Attorney Conduct fell below that of reasonable Professional conduct and such conduct cause me the Accused Actual prejudice satisfying the two tests set forth in "Strickland v. Washington" 466 U.S. 668, 667 (1984) The Court Appd Attorney Conduct fell below reasonable Professional standards and caused Him actual Prejudi

SUMMARY OF ARGUMENT II

ARGUMENT

II. Trial Court erred in failing to instruct the Jury on the law of accident. (citing A. 2d 1194, WARD V. STATE, (Del, Supr., 1976)).

Where there was evidence in Prosecution for attempted first degree murder that shooting was accidental, defendant was entitled to jury instruction on accident. 11 Del. C §§ 302 (b), 531, 613, 636.

While appellate Court will not ordinarily consider question which has not been fairly presented to Court below, exception to general rule exists in case of material defects which are apparent on face of record and which are basic, serious, and fundamental in their character and clearly deprive accused of substantial right and clearly show manifest injustice. Federal Rules of Evidence, rule 103 (d), 28 U.S.C.A.

Trial court's error, during homicide prosecution, in failing to give jury instruction on accident when evidence warranted such instruction resulted in plain error, and issue therefore could be examined on appeal even though such instruction had not been requested by the defendant. 11 Del. C. §§ 531, 613, 636; Federal Rules of Evidence, rule 103 (d), 28 U.S.C.A.

33

The defendant "BROWN" was indicted for Attempted Murder in the First degree, 11 Del. S 531, S636 and Convicted by a Superior Court jury of assault in the first degree, 11 Del. C. S. 613. He appeals alleging He was denied a fair trial as a consequence of the Court's failure to instruct the Jury on the law of accident.

Defendant "BROWN" argues that there was/is evidence that the shooting was accidental and that the trial Judge should have instructed the jury, under 11 Del. C. S. 302 (b) that an accidental shooting was a defense to the charge.:

11. Del. C. S 302 (b) provides:

" (b) The defendant may produce whatever evidence he has tending to negate the existence of any element of the offense, and if the Court finds that a reasonable juror might believe that evidence, the defendant is entitled to a jury instruction that the jury must consider whether the evidence raises a reasonable doubt as to the defendant's guilt."

Defendant "BROWN" set forth trial record evidence which bears on the character of the shooting collectively, such evidence was sufficient to invoke the reasonable doubt provisions of the statute. And if a new trial is granted and the Court finds that a reasonable juror might believe from that or similar evidence

- 34

that the shooting was accidental, defendant is entitled to a charge under s 302 (b).

the state more than likely will contend that because the defendant had not requested a jury instruction on accident, that the Supreme Court of the State of Delaware may not examine this issue on appeal .

An appellate Court will not ordinarily consider a question which has not been fairly presented to the Court below, Richards v. State, Del. Supr., 6 Terry 573, 77 A. 2d 199 (1950); but

" (a)n exception to the general rule exists in case of material defects which are apparent on the face of the record and which are basic, serious, and fundamental in their character, and which clearly deprive accused of a substantial right, or which clearly show manifest injustice, . . . . " ( Footnotes omitted) 24 C.J.S Criminal Laws 1669

See also 4 C.J.S Appeal & Error s 245. The " Plain error" exception has also been adopted in the Federal Rules of Evidence; thus rule 103 (d) provides :

" Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they

35

were not brought to the attention of the Court".
Given the following evidence as to an accidental
Shooting and the relevancy to reasonable doubt it
falls within the plain error rule.

The following evidence Warranted a Jury
instruction on accident : 11 Del. C. s 302 (b).

Trial Record 3-31-98   Burris - Cross   Page 66:1:10   (A-29)

1      Q  How many people were wrestling with the
2  person with the gun?
3      A  How many people?
4      Q  Yeah.
5      A  I think __ it was only Yusuf and Saladine,
6  Yusuf and Saladine.
7      Q  Did you ever hear any one say, I'm going to
8  shoot you or I'm going to kill you or any thing of
9  that nature?
10     A  No, Sir.

Trial Record 3.31.98 Burris - Redirect  page 72:17:22 (A-30)

17         THE COURT: So eventually, Yusuf and
18  Saladine and the gentleman struggled with the gun,
19  right?
20         THE WITNESS: Yes, Sir.
21         THE COURT  : And the gun goes off?
22         THE WITNESS : Yes, Sir.

36

continued : Evidence that warranted a jury instruction on accident pursuant to 11 Del.C.S. 302 (b)   :

Trial record 4·1·98 YUSUF FITZGERALD·Direct  Page 30:5:12 (A-31)

5     Q When he did that, did you see whether or
6 not he had any thing in his hand ?
7     A I wasn't sure at the time if he had
8 something, but I heard it .
9     Q You heard it ?
10    A Yeah, as we was tussling
11    Q What did you hear ?
12    A The shot.

Trial Record 4·1·98 MaryEllen Bogert-Cross Page 58:7:13 (A-32

7     THE WITNESS: They were Struggling .
8     THE COURT : So you believe they were
9 Struggling for about 10 or 15 minutes before any shot
10 was heard ?
11    THE WITNESS : Yes. They were struggling
12 first, and then during the Struggling, then I heard
13 the shot

* Trial Court's error, during homicide Prosecution, in failing to give Jury instruction on accident when evidence ___ Warranted Such instruction resulted in Plain error, issue there fore Could examined on appeal eventhough Such instruction had not been requested by the ___ defendant. 11 Del.C.§§ 531, 613, 636; Federal Rules of Evidence, rule 103 (d), 28 U.S.C.A." 366 A.2d 1194 WARD V. STATE-

37

CERTIFICATE OF SERVICE

I, JAMES BROWN A/K/A Edward X, Williams SBI# 350587 Certify Mailing three copies of Memorandum of LAW For a Petition 2882254 Writ of Habeas Corpus to the OFFice of the Clerk, U.S. District Court For the District of the State of Del., 844 N. KING St. LOCK BOX 18, Wilm. Delaware 19801-3570 ON this 30th Day of June 2005 to assist the Appendix of BROWN V. State of Delaware NOS. 31, 57, 2003 by placing in D.C.C, C/o hand For mailing in U.S. Mail BOX.

(Continued on back page)

On 6/30/05. Signed :

JAMES BROWN    A\K\A   EDWARD X. Williams

James Brown a/k/a Edward x Williams SBI#350587

D.C.C 1181 PADDOCK RD.

Unit # 21 MHU B-L-2

SMYRNA, DELAWARE

19977

(Hand Copy of certificate of service Kept by Petitioner)

"LEGAL MAIL PAYTO ATTACHED"

JAMES BROWN AIKIA
I/M EDWARD X. Williams
SBI# 350587 UNIT #21 MHU B1-2
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
844 N. KING ST. LOCKbox 18
Wilmington, Delaware
19801-3570

U.S.M.S.
X-RAY



PRIORITY MAIL
UNITED STATES POSTAL SERVICE TM
www.usps.gov
LABEL107R, OCT 1997